## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION THREE

| | | |
|---|---|---|
| In re the Termination of the Parental Rights to | ) ) ) | No. 33894-1-III (consolidated with No. 33895-9-III) |
| M.J. and M.J. | ) ) ) ) ) | UNPUBLISHED OPINION |

LAWRENCE-BERREY, J. — In A.E.'s first appeal to this court, she argued the trial court erred when it terminated her parental rights. In *In re Termination of M.J. and M.J.*, 187 Wn. App. 399, 348 P.3d 1265 (2015), we rejected some of her arguments, but remanded for additional findings. Specifically, we directed the trial court to consider the "meaningful role" incarcerated parent factor of RCW 13.34.180(1)(f), and to then determine whether A.E. was fit or unfit to parent her two youngest children.

In this, A.E.'s second appeal, she argues the trial court erred by not properly considering the "meaningful role" incarcerated parent factor. She also argues insufficient evidence supports the trial court's finding that she is currently unfit to parent her children. In affirming, we determine that the trial court's findings are sufficient.

FACTS

We previously set forth the basic facts of this case in our prior decision. We therefore discuss those facts here only in a general fashion.

A.E. is the mother of M.J. and M.J. The children were two years old (the boy) and one year old (the girl) at the time the Department of Social and Health Services (DSHS) commenced the dependency that was the forerunner to this termination action. DSHS commenced the dependency action soon after A.E.'s arrest for murdering a young woman. A.E. pleaded guilty to second degree murder, and her earliest release date is December 2020.

Both children had significant problems that preexisted the dependency action. The boy had severe emotional problems, and he manifested his problems with tantrums and aggressive actions. The girl suffered from developmental delays. Because of the children's significant emotional and developmental problems, maternal relatives were unable or unwilling to provide care for the children, and the children went through a series of foster care placements.

Because the older boy's emotional issues were especially severe, he was evaluated by a specialist. The specialist determined the boy suffered attachment issues due to being moved frequently from caregiver to caregiver. DSHS concluded it was in the children's

2

best interests to find permanent placement as soon as possible, and that maintaining a relationship with A.E. would exacerbate the children's emotional problems. Also, visits to see the mother in prison were not advised because of the children's ages, the length of the drive, and the need for overnight accommodations. The specialist believed that any more than two visits per year would be bad for the children.

Despite these limitations in seeing her children, A.E. diligently communicated with her children by sending them letters, pictures, and Christmas gifts. A.E. has done what she could, post-incarceration, to have a relationship with her children.

In its original termination decision, the trial court expressed concern over how long reunification would take, given A.E.'s lengthy prison term and need for services even after she completes her term. The trial court also expressed doubt whether A.E. could develop a meaningful relationship with the children, given the children's severe emotional and developmental problems. The trial court concluded that termination of the parental relationship was appropriate so as to find a permanent placement for the children.

A.E. timely appealed. We rejected some of A.E.'s arguments, but agreed with others. Specifically, we remanded for the trial court to consider the 2013 amendments to RCW 13.34.180(1)(f). The amendments require the trial court to consider whether an incarcerated parent plays a "meaningful role" in a child's life based on the factors listed

in RCW 13.34.145(5)(b)(i)-(vi). *M.J.*, 187 Wn. App. at 408. We directed the trial court

to make "some record" of its consideration of A.E.'s meaningful role in the children's

lives. *Id.* at 411. In the unpublished portion of the opinion, we directed the trial court to

make a new fitness or unfitness ruling once it completed its reconsideration of the

"meaningful role" factor. We gave the trial court discretion to base its decision on

existing evidence or to take additional evidence.

On remand, the trial court received additional evidence from A.E. and from the

court-appointed special advocate (CASA). A.E. provided two declarations, and the

CASA attached a neuropsychological evaluation of the boy. The trial court then issued

supplemental findings:

> [A]lthough the mother has attempted to maintain a significant relationship
> with her children, it is not in the children's best interests to continue the
> relationship. The record at the termination trial was clear: the children have
> no knowledge or recollection of their mother, they both suffer from a host
> of developmental delays and disabilities that make maintaining any
> significant relationship with her impossible, and the children cannot be
> safely transported to visit her in order to develop or maintain any
> relationship with her in any meaningful way.
> In addition, the mother's lengthy incarceration time, coupled with the
> children's young ages at placement[,] means there was no meaningful
> relationship, from the child's [sic] point of view, to be maintained.
> The court also finds, based on the court's review of the record at
> trial, that the referrals prior to the mother's arrest on Murder [sic] charges
> reflected a dysfunctional family home, marked by domestic violence, drug
> abuse, violence to the children and general neglect. Coupled with the
> serious and extreme special behavioral and developmental needs of the

4

children, it is unlikely that, even if the mother were released to the community, she would be fit and able to parent her children in the near future. The court finds her currently unfit and unavailable to parent as a result. It is not in the children's best interests to maintain the parent-child relationship, and continuing the relationship, despite the mother's efforts, delays early permanency for them.

Clerk's Papers (CP) at 521-22. In its oral ruling, the trial court noted that it had considered the factors in RCW 13.34.145(5)(b)(i)-(vi). Based on the findings that there was no meaningful relationship from the children's point of view, and that A.E. is currently unfit and unavailable to parent, the trial court again terminated A.E.'s parental rights to the children. A.E. timely appeals.

## ANALYSIS

### A. INCARCERATED PARENT FACTOR: MEANINGFUL ROLE

Parental rights may not be terminated unless DSHS proves the six elements set forth in RCW 13.34.180(1) by clear, cogent, and convincing evidence. RCW 13.34.190(1)(a)(i); *In re Welfare of A.B.*, 168 Wn.2d 908, 911-12, 232 P.3d 1104 (2010). Due to the limited nature of the prior remand, this appeal focuses narrowly on a portion of the sixth element, the "meaningful role" factor contained within RCW 13.34.180(1)(f).

RCW 13.34.180(1)(f) requires DSHS to prove the following factor by clear, cogent, and convincing evidence:

That continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home. *If the parent is incarcerated, the court shall consider whether a parent maintains a meaningful role in his or her child's life based on factors identified in RCW 13.34.145(5)(b)*[1] ....

(Emphasis added.)

A.E. first argues the trial court did not properly decide how her efforts at maintaining a meaningful role in her children's lives, despite her incarceration, affected the children's prospects for early integration into a stable and permanent home. We

---

[1] RCW 13.34.145(5)(b) defines a parent's "meaningful role" in terms of six factors:

(i) The parent's expressions or acts of manifesting concern for the child, such as letters, telephone calls, visits, and other forms of communication with the child;

(ii) The parent's efforts to communicate and work with the department or supervising agency or other individuals for the purpose of complying with the service plan and repairing, maintaining, or building the parent-child relationship;

(iii) A positive response by the parent to the reasonable efforts of the department or the supervising agency;

(iv) Information provided by individuals or agencies in a reasonable position to assist the court in making this assessment, including but not limited to the parent's attorney, correctional and mental health personnel, or other individuals providing services to the parent;

(v) Limitations in the parent's access to family support programs, therapeutic services, and visiting opportunities, restrictions to telephone and mail services, inability to participate in foster care planning meetings, and difficulty accessing lawyers and participating meaningfully in court proceedings; and

(vi) Whether the continued involvement of the parent in the child's

6

disagree.

The trial court's supplemental findings note that A.E. never had a meaningful role in her youngest children's lives. The trial court also found that A.E. never could have a meaningful role in their lives because of the visitation restrictions made necessary by the children's emotional and developmental issues. Because A.E. had no meaningful role, nor could her efforts change this fact, the court found that continuation of A.E.'s parental relationship was futile and delayed early permanency for her children.

A.E. also argues the trial court erred in considering the best interests of the children rather than her own efforts to remain involved in their lives. She appears to be arguing that her efforts and interests should supersede the best interests of her children. If this is her argument, it is refuted by RCW 13.34.145(5)(b)(vi), which allows the trial court to consider "[w]hether the continued involvement of the parent in the child's life is in the child's best interest."

A.E. also argues the trial court erred because it failed to consider *all* six factors in RCW 13.34.145(5)(b). But the language of that section refutes her argument. RCW 13.34.145(5)(b) provides, "The court's assessment of whether a parent who is incarcerated maintains a meaningful role in the child's life *may* include consideration of

life is in the child's best interest.

the following [six factors]." (Emphasis added.) Further, it is apparent from the record that the trial court considered four of the six factors. The court considered the first factor when it considered A.E's efforts to be involved with her children's lives. The court considered the fourth factor when it considered the information provided by therapists, DSHS specialists, a CASA, A.E., and A.E.'s family. The court considered the fifth factor when it considered the limitations in the support programs and treatment services available to A.E. while she is incarcerated. The court considered the sixth factor when it considered if it was in the children's best interests for A.E. to remain involved in their lives.

This court instructed the trial court to make "some record" of its consideration of the factors in RCW 13.34.145(5)(b). *M.J.*, 187 Wn. App. at 411. The trial court has clearly done this.

B.    PARENTAL UNFITNESS

Parents have a constitutional due process of law right not to have their relationships with their natural children terminated in the absence of an express or implied finding that they, at the time of trial, are currently unfit to parent their children. *A.B.*, 168 Wn.2d at 918-20 (citing *Santosky v. Kramer*, 455 U.S. 745, 760, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)). To meet its burden, DSHS is required to prove by clear,

cogent, and convincing evidence that the parent's parenting deficiencies prevent the parent from providing the children with basic nurture, health, or safety. *In re Welfare of A.B.*, 181 Wn. App. 45, 61, 323 P.3d 1062 (2014).

Previously, the trial court found that A.E. is a binge drinker, and her use of alcohol was a major contributing factor to her crime of second degree murder. The trial court further found that A.E. cannot begin treatment for alcoholism until she is released from custody, which is December 2020 at the earliest. Nor can she participate in attachment therapy with the older boy to help him develop a secure attachment with her until after her release. Nor can she have a psychological evaluation until after her release. Moreover, the trial court found that A.E. will need an anger management or risk of violence assessment, and this, too, cannot be done until after her release. To her credit, A.E. has taken advantage of a number of services offered to her while incarcerated. But she will not be able to enroll in and complete the necessary programs until years after her release from prison.

Although the trial court did not explicitly find that A.E.'s parental deficiencies prevent her from providing for her children's basic nurture, health, and safety, the trial court's supplemental findings allow us to confidently imply this:

> The court also finds, based on the court's review of the record at trial, that the referrals prior to the mother's arrest on Murder [sic] charges reflected a dysfunctional family home, marked by domestic violence, drug abuse, violence to the children and general neglect. Coupled with the serious and extreme special behavioral and developmental needs of the children, it is unlikely that, even if the mother were released to the community, she would be fit and able to parent her children in the near future. The court finds her currently unfit and unavailable to parent as a result.

CP at 522. The living conditions described in these findings are seriously detrimental. For a parent to expose her children to such dangers *is* a failure to provide for their basic nurture, health, and safety. And the fact that these problems have not been remedied by enrollment and completion in the necessary programs permits the trial court to infer current parental unfitness.

Although A.E. blames these problems on her ex-boyfriend and argues that many of the alleged problems were determined by DSHS to be unfounded, the trial court had substantial evidence upon which to find DSHS proved current parental unfitness by clear, cogent, and convincing evidence. We will not disturb its supported finding on appeal. *In re Welfare of L.N.B.-L*, 157 Wn. App. 215, 243, 237 P.3d 944 (2010).

10

No. 33894-1-III; 33895-9-III
*In re Parental Rights to M.J. & M.J.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Fearing, C.J.                                                      Siddoway, J.